UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| SUZANNE BARRAN,<br><br>        Plaintiff,<br><br>    vs.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>        Defendant. | CIV. NO. 18-00349 LEK-KJM |

**ORDER GRANTING PLAINTIFF'S APPEAL AND REVERSING THE
ADMINISTRATIVE LAW JUDGE'S SEPTEMBER 6, 2017 DECISION**

Before the Court is Plaintiff Suzanne Barran's
("Plaintiff") Complaint for Review of Social Security Disability
Insurance Determination, filed on September 17, 2018, in which
she appeals from Administrative Law Judge Jesse J. Pease's
("ALJ") September 6, 2017 Decision ("Appeal").  The ALJ issued
the Decision after conducting a hearing on August 25, 2017.
[Administrative Record ("AR") at 16.[1]]  The ALJ ultimately
concluded that Plaintiff was not disabled, for purposes of the
Social Security Act, from May 6, 2014 through the date of the
Decision.  [Decision, AR at 17.]

---

[1] The Decision, including the Notice of Decision –
Unfavorable and the List of Exhibits, is AR pages 13-29.

On February 15, 2019, Plaintiff filed her Opening Brief.  [Dkt. no. 12.]  Defendant Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner"), filed her Answering Brief on May 1, 2019, and Plaintiff filed her Reply Brief on May 14, 2019.  [Dkt. nos. 16, 17.]  The Court finds this matter suitable for disposition without a hearing pursuant to Rule LR7.1(c) of the Local Rules of Practice for the United States District Court for the District of Hawaii ("Local Rules").  Plaintiff's Appeal is granted, and the ALJ's Decision is vacated.  The case is remanded to the ALJ for further proceedings.

## BACKGROUND

On March 2, 2015, Plaintiff protectively filed an application for a period of disability and disability insurance benefits, alleging a disability beginning May 6, 2014 ("alleged onset date").  The claim was denied, initially, and because it was filed in a prototype office, there was no reconsideration request.[2]  On June 29, 2015, Plaintiff filed a request for a hearing.  [Decision, AR at 16.]  At the August 25, 2017 hearing,

---

[2] See Soc. Sec. Admin., Programs Operations Manual System (POMS), DI 12015.100 Disability Redesign Protoype Model (effective 9/16/19 to present), http://policy.ssa.gov/poms.nsf/lnx/0412015100 (describing, *inter alia*, the elimination of the reconsideration step prototype test states).

Plaintiff was represented by Jennifer Lyons, Esq., on behalf of Sean Sullivan, a non-attorney representative.  June Hagen, an impartial vocational expert ("VE"), also appeared and testified. [Id.]  In the instant Appeal, Plaintiff disputes the ALJ's findings beginning with step one of the five-step sequential analysis to determine whether a claimant is disabled.

At step one, the ALJ found that, from April 25, 2016, to November 15, 2016, Plaintiff worked as a bedside nurse, earning above substantial gainful activity levels.  [Id. at 18.] The ALJ also found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date.  The ALJ declined to make a determination at step one based on Plaintiff's work, choosing instead to complete the five-step analysis and make a decision at step five.  [Id.]

At step two, the ALJ determined Plaintiff had the following severe impairments:

> right shoulder impingement; history of right C6-7 herniated disc, with right C7 radiculopathy, status-post cervical discectomy & fusion on October 30, 2014 (e.g., Exhibit 2F, pages 52-53), with residual pain and radiculopathy; brachial neuropathy; arthritis of the left knee (e.g., Exhibit 13F, pages 31 and 171), and; left rotator cuff syndrome (20 CFR 404.1520(c)).

[Id. (emphasis omitted).]  Plaintiff's records showed a history of thyroidectomy, stripping and ligation of varicose veins, which the ALJ considered non-severe because Plaintiff did not

3

allege these as impairments and the evidence did not indicate they were severe.  [Id. at 19 (citing Exhibit 2E, page 2).³] Plaintiff did not allege, and the ALJ found no evidence of, a severe mental impairment.  [Id.]

At step three, the ALJ determined Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1" as to either § 1.02 (addressing major dysfunction of a joint) or § 1.04 (addressing disorders of the spine).  [Id. (emphasis omitted).]

Before reaching step four, the ALJ determined Plaintiff had the residual functioning capacity ("RFC") to

> lift, carry, push or pull 20 pounds occasionally and 10 pounds frequently, she can stand/walk for 6 hours out of an 8-hour workday, and she can sit for 6 hours out of an 8-hour workday (i.e., light exertion (20 CFR 404.1567(b); SSR 83-10)); she can perform postural activities frequently; she cannot climb ladders, ropes, or scaffolds; she can frequently use her shoulders for reaching except for only occasional above shoulder work bilaterally; she my frequently (i.e., 2/3 of the workday (e.g., SSR 83-10)), be allowed to keep her head in a comfortable position to the front,

---

³ Exhibit 2E is the Disability Report – Adult, dated March 3, 2015; [AR at 196-205;] page 2 of Exhibit 2E contained a section titled "Medical Conditions" where Plaintiff was asked to "[l]ist all of the physical or mental conditions . . . that limit your ability to work" and to "[l]ist each condition separately."  [AR at 197.]  Plaintiff listed: "Right arm Radiculopathy," "Cervical Condition," and "Right shoulder tendonitis/bursitis."  [Id.]

and; she cannot perform work with a conveyer
belt, due to repetitive turning of the head
required in such work (20 CFR 404.1520(e)).

[Id. (emphasis omitted).]

In considering Plaintiff's symptoms to determine
Plaintiff's RFC, the ALJ looked at: opinion evidence; and all
symptoms and the extent that they could be reasonably accepted
as consistent with the objective medical evidence.  [Id.]  The
ALJ followed the two-step process to: 1) determine whether there
is a physical or mental impairment that could reasonably be
expected to produce the Plaintiff's pain or other symptoms; and
2) "evaluate the intensity, persistence, and limiting effects of
the claimant's symptoms to determine the extent to which they
limit the claimant's functional limitations."  [Id. at 20.]

The ALJ determined Plaintiff's medically determinable
impairments reasonably caused the alleged symptoms, but
Plaintiff's complaints regarding intensity, persistence, and the
limiting effects were not consistent with the medical evidence
and other evidence in the record.  [Id.]  Plaintiff complained
of pain when lifting, pushing, and standing, and used a heating
pad, physical therapy, and over the counter pain medication for
pain relief.  [Id.]  She had limited range of motion in her
right arm, had trouble brushing/washing her hair, and could not

squat.  [Id. (citing Exhibit 3E).⁴]  She testified that she felt pain in her shoulders when talking on the phone and her hand would go numb.  [Id.]

However, Plaintiff testified that she could: drive a car short distances; shop in stores; make simple meals regularly; do light housework such as cleaning and laundry (but not lifting the ironing board or a laundry basket); and sit, stand, walk, climb stairs, and kneel.  [Id. (citing Exhibit 3E).]  Plaintiff could lift a gallon of milk in her right hand.  [Id.]  Plaintiff worked for about six months in 2016 in substantial gainful activity at medium to heavy levels of exertion, and she relocated from Virginia to Hawai`i.  [Id.]  A February 2015 progress note indicated she only had intermittent neck pain when carrying laundry and grocery bags.  [Id. (citing Exhibit 4F, page 5).⁵]

---

⁴ Exhibit 3E is the Function Report – Adult, dated March 24, 2015.  [AR at 206-16.]

⁵ Exhibit 3F is medical records from Plaintiff's neurological examinations and cervical discectomy; pages 5-6 consist of the operative report for Plaintiff's C6-C7 anterior cervical discectomy and arthrodesis, by Vladimir Dadashev, M.D., dated October 30, 2014.  [AR at 354-55.]  An anterior cervical discectomy "is a type of neck surgery that involves removing a damaged disc to relieve spinal cord or nerve root pressure and alleviate corresponding pain, weakness, numbness, and tingling." Kevin O'Neill, MD, MS, , *ACDF: Anterior Cervical Discectomy and Fusion*, SPINE-health, https://www.spine-health.com/treatment/spinal-fusion/acdf-anterior-cervical-discectomy-and-fusion (last visited June 5, 2019).  "Arthrodesis
(. . . continued)

Plaintiff's medical records indicated that, from May through August of 2014, Plaintiff complained of upper back and neck pain radiating down her right arm, and was treated with cervical spine epidural steroid pain block injections. [Id. (citations omitted).] Plaintiff had a cervical discectomy on October 30, 2014, and a November 2014 electromyogram showed "normal, uneventful neurophysiologic monitoring." [Id. at 21 (citing Exhibits: 2F, pages 51-55; 3F, pages 5-6).[6]] In December 2014, Dr. Dadashev noted that, while Plaintiff still had neck and right shoulder ache, most of her arm pain had resolved and she felt "'much better.'" [Id. (quoting Exhibit 3F, page 9).[7]] In December 2015 and January 2015, Plaintiff had neck pain when turning her heard or staying in a constant position, but the ALJ

is the fusion of vertebrae over a joint space that occurs through a natural process or as a result of surgical procedure. In surgery, arthrodesis, or fusion between two vertebrae, can be achieved by placing bone graft and/or bone graft substitute to bridge the vertebrae so that new bone grows into the spaces." Arthrodesis Definition, SPINE-health, https://www.spine-health.com/glossary/arthrodesis (last visited June 5, 2019).

[6] Exhibit 2F at pages 51-55 is the Operative Report from Winthrop-University Hospital, dated November 2, 2014, regarding Plaintiff's C6-C7 anterior cervical discectomy and arthrodesis, Surgical Pathology Report dated October 30, 2014, and Imaging Report dated October 30, 2014. [AR at 322-26.]

[7] Exhibit 3F at page 9 is a follow up note from Dr. Dadashev, dated December 10, 2014. [AR at 358.]

determined "this is addressed by limiting her to keeping her
head in a comfortable position." [Id. (citations omitted).]

In February 2015, Plaintiff "had neck cramping and
pain when lifting heavy weights," [id. (citing Exhibit 4F, pages
9 and 12),[8]] but the ALJ stated this is addressed by limiting her
to lifting only twenty pounds occasionally and ten pounds
frequently, [id.].  Further, in February and March 2015,
progress notes indicated: Plaintiff "could move all her limbs
well"; "her musculoskeletal examination was unremarkable"; and
"she had a pain block injection to the right shoulder." [Id.
(citing Exhibits: 5F; 10F, page 3).[9]]  Plaintiff's complaints of
neck pain were also addressed by limiting her to keeping her
head in a comfortable position, with only frequent postural
activities.  [Id. (citing Exhibits 4F, pages 1 and 3; 13F, pages
3 and 5).[10]]

---

[8] Exhibit 4F at page 9 is a treatment note from Chris Moros,
M.D., dated February 6, 2015, and page 12 is a treatment note
from Dr. Moros dated February 3, 2015.  [AR at 369, 372.]

[9] Exhibit 5F is Anthony S. Horvath, M.D.'s "Encounter
details" for Plaintiff's office visit, dated February 6, 2015.
[AR at 469-72.]  Exhibit 10F at page 3 is part of Dr. Horvath's
"Encounter details" for Plaintiff's office visit, dated
February 7, 2015.  [AR at 499.]

[10] Exhibit 4F at page 1 is a treatment note from Dr. Moros,
dated March 9, 2015, [AR at 361,] and page 3 is a treatment note
from Dr. Moros, dated March 6, 2015, [AR at 363]; Exhibit 13F at
page 3 is a treatment note from Dr. Moros dated March 12, 2015,
(. . . continued)

Six months or more after the October 30, 2014 surgery, Plaintiff was doing well and had only minimal numbness, but further into November and December 2015, she experienced difficulty doing household chores, such as mopping, vacuuming, and lifting heavy grocery bags.  [Id. (citing Exhibit 13F, pages 33-60).[11]]  In 2016, Plaintiff reported feeling "pain when keeping her head bent down for an extended period of time, lifting her right arm up over her head, or lifting more than 8 pounds," and she "reported some periodic stiffness and localized pain in the upper back that sometimes radiated to her neck and right shoulder area, and her cervical spine and right shoulder were tender to palpation."  [Id. (citing Exhibit 13F, pages 62, 65, 69, 71, 77-114).[12]]  In June, July, and August 2016, Plaintiff "had pain and numbness as well as cervical and paraspinal tenderness, but her neck pain was localized and no

[AR at 576,] and page 5 is a treatment note from Dr. Moros dated March 27, 2015.  [AR at 578.]

[11] Exhibit 13F at pages 33-60 are treatment notes from Dr. Moros between the dates of November 6, 2015 and December 30, 2015.  [AR at 606-33.]

[12] The following pages in Exhibit 13F are records from Dr. Moros: page 62 is a January 4, 2016 re-evaluation note; [AR at 635;] page 65 is a January 12, 2016 treatment note; [AR at 638;] page 69 is a January 20, 2016 treatment note; [AR at 642;] page 71 is a January 22, 2016 treatment note; [AR at 644;] and pages 77-114 are treatment notes between the dates of February 8, 2016 to June 6, 2016, [AR at 650-87].

longer traveled to her arm and right hand," and, although she had reduced flexion and/or extension, she gained normal strength and sensation.  [Id. at 21-22 (citing Exhibit 9F, pages 1-9).[13]] In December 2016, Plaintiff's x-rays "showed no fractures, subluxations, dislocations, or significant abnormalities, and she had normal strength and no weakness of the upper extremities."  [Id. at 22 (citing Exhibit 13F, page 155).[14]]

The ALJ found that, in early 2017, Plaintiff complained of right-side cervical pain, weakness in her upper extremities, and received a pain block injection; still, her active range of motion was only slightly limited, she had good shoulder motion but with pain, her grip was good, and her sensation and strength were normal.  [Id. (citing Exhibits: 11F, pages 2 and 7; 12F, pages 1-5, 9, 12, and 14; 13F, page 159).[15]]

---

[13] Exhibit 9F at pages 1-9 are records from Robert Iadevaio, M.D., dated June 22, 2016, and August 15, 2016.  [AR at 484-92.]

[14] Exhibit 13F at page 155 is the first page of the report by Steven Goodman, M.D., dated December 12, 2016.  [AR at 728.]

[15] Exhibit 11F at page 2 is the Daily Note/Billing Sheet for Dr. Hecht, dated January 12, 2017, [AR at 516,] and page 7 is the Physical Therapy Initial Examination for Dr. Hecht, dated January 12, 2017.  [AR at 521.]  Exhibit 12F at pages 1-5 are Plaintiff's medical records dated January 18, 2017 from Megan Kelly, PA-C, and Costa Soteropoulos, M.D.; [AR at 551-55;] page 9 is Plaintiff's January 30, 2017 medical record from Katherine Morgan, PA-C, and Dr. Soteropoulos; [AR at 559;] and pages 12 and 14 are portions of Plaintiff's medical records from Dr. Soteropoulos, [AR at 562, 564].  Exhibit 13F at page 159 is
(. . . continued)

Plaintiff received another pain block in April 2017, and May and June 2017 progress notes indicated she had pain and local tenderness, but otherwise had normal reflexes, coordination, posture, and gait, and there was no evidence of, *inter alia*, deformity or scoliosis. [Id. (citing Exhibit 13F, pages 163, 165, 167; 12F, pages 16-22).[16]] Plaintiff had corticosteroid pain block injections to her left knee in June 2017, but the ALJ found no indication that this limited Plaintiff to less than six hours of standing/walking. [Id. (citing Exhibit 13F, pages 67, 75, 77, and 83).[17]]

As to the opinion evidence, in June 2015, Jerome Caiati, M.D., concluded that Plaintiff could: sit, stand, walk, bend, and climb on an unrestricted basis; and reach, push, pull on an unrestricted basis with her left upper extremity, but with limitations to her right side. [Id. at 23 (citing

---

Plaintiff's medical record from Dr. Goodman dated February 6, 2017. [AR at 732.]

[16] Exhibit 13F at pages 163, 165, and 167 are Dr. Goodman's progress notes dated April 3, 2017, April 24, 2017, and June 20, 2017, respectively. [AR at 736, 738, 740.] Exhibit 12F at pages 16-22 are Plaintiff's medical records from PA-C Morgan, dated May 15, 2017 and PA-C Kelly, dated June 22, 2017. [AR at 566-72.]

[17] Exhibit 13F at pages 67, 75, 77, and 83 are Dr. Moros's progress notes dated January 12, 2016, February 3, 2016, February 8, 2016, and February 16, 2016, respectively. [AR at 640, 648, 650, and 656.]

Exhibit 7F).[18]]  Dr. Caiati is not a treating source, but the ALJ gave Dr. Caiati's opinions great weight because he is familiar with the Social Security disability program, and his conclusions were consistent with the medical evidence.  [Id.]

Plaintiff's treating physician, Chris Moros, M.D., stated Plaintiff was "totally disabled" in October 2014 and November 2016.  [Id. (citing Exhibits: 4F, page 40; 13F, page 142).[19]]  The ALJ noted "an opinion on disability is reserved to the Commissioner," and that Dr. Moros did not provide a function-by-function analysis.  [Id. (citing Exhibits: 4F, page 40; 13F, page 142).]  The ALJ concluded that he did not need to request a follow up function-by-function analysis by Dr. Moros because the treatment Dr. Moros provided Plaintiff

---

[18] Dr. Caiati is the orthopedic consultative examiner used by the State Agency in June 2015 whom Plaintiff was referred to by the Division of Disability Determination for an orthopedic examination.  [AR at 475.]  Exhibit 7F is Dr. Caiati's Orthopedic Examination, [AR at 475-79,] and page 3 is his diagnosis and prognosis of Plaintiff's abilities.  [Id. at 477.]

[19] Exhibits 4F at page 40 is a certification from Dr. Moros dated October 7, 2014, stating Plaintiff was in his care for "cervical" and is "TOTALLY DISABLED AT THIS TIME."  [AR at 400.]  Exhibit 13F at page 142 is a certification form, signed by Dr. Hecht on November 15, 2016, stating Plaintiff was in his care for "Both Shoulders Neck" and is "TOTALLY DISABLED AT THIS TIME."  [AR at 715 (emphasis in original).]  The form was apparently issued after a November 15, 2016 office visit, during which Dr. Hecht opined: "Patient is disabled as of today."  [AR at 713.]  Dr. Hecht noted Plaintiff's restricted range of motion and tenderness in her left shoulder, but that no fractures or dislocations were visible on an x-ray.  [Id.]

does not justify additional limitations from those indicated in the RFC.  [Id.]

Since there was no State Agency medical opinion, the ALJ concluded that 20 C.F.R. § 404.1527(e), addressing State Agency medical consultants, did not apply.  [Id.]  However, in June 2015, a single decisionmaker concluded Plaintiff could perform light exertion with limited reaching with the right upper extremity, which further supported the ALJ's RFC.  [Id. (citing Exhibit 2A).[20]]

At step four, the ALJ determined Plaintiff was unable to perform any of her past relevant work, which the VE "classified as a General Duty Nurse, Dictionary of Occupational Titles ('DOT') #075.364-010, skilled Specific Vocational Preparation ('SVP') 7, medium level of exertion," but which Plaintiff actually performed at the heavy level.  [Id.]

At step five, the ALJ considered Plaintiff's age (forty-six), her education (college-level), [id. at 23 (citing Exhibit 2E, page 3),[21]] and past experience (General Duty Nurse

---

[20] Exhibit 2A is the Disability Determination Explanation, dated June 18, 2015.  [AR at 59-67.]  It was prepared by "J. Kelson, SDM."  [AR at 65, 67.]

[21] Exhibit 2E is the Disability Report – Adult, dated March 3, 2015; page 3 at section 5 titled "Education and Training Information" states that Plaintiff has had "3 years of college," completed in 2014.  [AR at 198.]  However, Plaintiff
(. . . continued)

with knowledge of medicine, medical procedures, and patient care), and concluded Plaintiff has skills transferable to occupations existing in significant numbers within the national economy, [id. at 24].  At the hearing, the VE testified that the following jobs were available to Plaintiff:

> 1.  Companion, DOT #309.677-010, light level of exertion, semi-skilled SVP 3, with 80,000 jobs in the national economy;
>
> 2.  Personal Attendant, DOT #309.674-014, light, semi-skilled SVP 3, with 6,100 national jobs, and;
>
> 3.  Office Nurse, DOT #075.374-014, light, skilled SVP 7, with 239,000 national jobs.

[Id. at 24.]  The ALJ concluded that, even if Plaintiff could not perform the full range of light exertional-level work given her limitations set forth in the RFC, her transferable work skills and the available occupations were sufficient to conclude that Plaintiff is not disabled under Medical-Vocational Rule 202.22.  [Id. (citing (SSR 83-14).[22]]

In the instant Appeal, Plaintiff first argues the ALJ committed legal error by failing to follow the five-step analysis when he failed to identify and adjudicate Plaintiff's claim as to two periods of disability, one open, and one closed,

---

testified that she obtained her associate's degree after two years of college.  [8/25/17 Hrg. Trans., AR at 52.]

[22] SSR 83-14 is available at 1983 WL 31254.

separated by a period of substantial gainful activity.  [Opening Brief at 1.]  Plaintiff argues the second period of disability was caused by her left shoulder injury, medical evidence of which the ALJ improperly ignored.  Second, Plaintiff argues the ALJ erred in his treatment of the medical evidence by giving more weight to a non-treating doctor than Plaintiff's treating specialists.

**STANDARD**

## I.   Review of Social Security Decisions

The Ninth Circuit conducts a de novo review of a district court's order in a social security appeal.  Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1098 (9th Cir. 2014).  Thus, in reviewing the Commissioner's decision, this Court applies the same standards the Ninth Circuit applies.

A court will only disturb the Commissioner's decision if it is not supported by substantial evidence or if it is based on legal error.  Id.  "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (citation and internal quotation marks omitted).  In reviewing a decision by the Commissioner, a district court must consider the entire record as a whole.  Id.  Where the inferences reasonably drawn from the record would support either

15

affirmance or reversal, the district court may not substitute

its judgment for the ALJ's.  Molina v. Astrue, 674 F.3d 1104,

1111 (9th Cir. 2012).  To ensure a court does not substitute its

judgment for the ALJ's, it must "'leave it to the ALJ to

determine credibility, resolve conflicts in the testimony, and

resolve ambiguities in the record.'"  Brown-Hunter v. Colvin,

806 F.3d 487, 492 (9th Cir. 2015) (quoting Treichler, 775 F.3d

at 1098).

## II.  **Five-Step Analysis**

The following analysis applies in cases involving

review of the denial of social security disability benefits.

> For purposes of the Social Security Act, a
> claimant is disabled if the claimant is unable
> "to engage in any substantial gainful activity by
> reason of any medically determinable physical or
> mental impairment which can be expected to result
> in death or which has lasted or can be expected
> to last for a continuous period of not less than
> 12 months."  42 U.S.C. § 423(d)(1)(A).  In order
> to determine whether a claimant meets this
> definition, the ALJ employs a five-step
> sequential evaluation.  Parra v. Astrue, 481 F.3d
> 742, 746 (9th Cir. 2007); 20 C.F.R.
> §§ 404.1520(a), 416.920(a).  In brief, the ALJ
> considers whether a claimant is disabled by
> determining: (1) whether the claimant is "doing
> substantial gainful activity"; (2) whether the
> claimant has a "severe medically determinable
> physical or mental impairment" or combination of
> impairments that has lasted for more than 12
> months; (3) whether the impairment "meets or
> equals" one of the listings in the regulations;
> (4) whether, given the claimant's "residual
> functional capacity," the claimant can still do
> his or her "past relevant work"; and (5) whether
> the claimant "can make an adjustment to other

work."  20 C.F.R. §§ 404.1520(a), 416.920(a).
The claimant bears the burden of proof at steps
one through four.  Parra, 481 F.3d at 746.

Molina, 674 F.3d at 1110.  If the analysis reaches step five,

the burden shifts to the Commissioner to prove the claimant can

perform other work.  Garrison v. Colvin, 759 F.3d 995, 1011 (9th

Cir. 2014).

## DISCUSSION

### I.   Step One Error

#### A.   The ALJ's Duty to Develop the Record

While it is true that it is incumbent on
claimants to provide sufficient medical evidence
of one or more disabling impairments, it has
"long [been] recognized that the ALJ is not a
mere umpire at [an administrative proceeding],
but has an independent duty to fully develop the
record[.]"  Higbee v. Sullivan, 975 F.2d 558, 561
(9th Cir. 1992, as amended Sept. 17, 1992) (per
curiam); see also Sims v. Apfel, 530 U.S. 103,
110-11 (2000) ("Social Security proceedings are
inquisitorial rather than adversarial.  It is the
ALJ's duty to investigate the facts and develop
the arguments both for and against granting
benefits[.]").  The ALJ has an obligation to take
reasonable steps to ensure that issues and
questions raised by medical evidence,
particularly evidence from treating physicians,
are addressed so that the disability
determination is fairly made on a sufficient
record of information, be it favorable or
unfavorable to the claimant.  See Tidwell v.
Apfel, 161 F.3d 599, 602 (9th Cir. 1999); and,
Cox v. Califano, 587 F.2d 988, 991 (9th Cir.
1978); see also 42 U.S.C. § 421(h).

Tucker v. Berryhill, Case No. 18-cv-01861-RMI, 2019 WL 4738222,

at *6 (N.D. Cal. Sept. 27, 2019) (alterations in Tucker).

17

> "Ambiguous evidence, or the ALJ's own finding
> that the record is inadequate to allow for proper
> evaluation of the evidence, triggers the ALJ's
> duty to conduct an appropriate inquiry."
> [Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th
> Cir. 2001)] (punctuation modified)[.]  "The ALJ
> may discharge this duty in several ways,
> including: subpoenaing the claimant's physicians,
> submitting questions to the claimant's
> physicians, continuing the hearing, or keeping
> the record open after the hearing to allow
> supplementation of the record."  Tonapetyan, 242
> F.3d at 1150.

Pope v. Comm'r of Soc. Sec. Admin., No. CV 17-394-TUC-LAB, 2018

WL 2057635, at *4 (D. Ariz. May 3, 2018); see also Tonapetyan,

242 F.3d at 1150 ("This duty extends to the represented as well

as to the unrepresented claimant." (citation omitted)).

## B.    The Evidence Triggered the ALJ's Duty

Plaintiff argues the ALJ erred by deciding that her

work as a nurse at above substantial gainful activity levels

from April 25, 2016 to November 15, 2016 was not substantial

gainful activity.  [Opening Brief at 9.]  Plaintiff argues she

had two periods of disability, separated by a period of work,

not one continuous period of disability running from the alleged

onset date, as found by the ALJ.[23]  [Id.]

---

[23] This is not the argument Plaintiff presented to the ALJ.
See Prehearing Mem., AR at 256 (arguing Plaintiff's return to
work from April 25, 2016 through November 15, 2016 was not
substantial gainful activity).  It was also not raised in her
brief to the Appeals Council.  See Appeals Council brief, AR at
259-60.

While not argued as the start of a new period of disability, Plaintiff raised the issue of her left shoulder as the cause of impairment to the ALJ in her testimony. [8/25/17 Hrg. Trans., AR at 40.] Plaintiff explained to the ALJ that she tore her left rotator cuff during her 2016 return to work as a nurse, following what is now argued to have been a closed period of disability. The injury occurred when she, with the assistance of only one other person, turned over an unresponsive, ventilated patient. [Id.] Plaintiff submitted medical evidence of her "5 x 4 mm high-grade articular and interstitial tear 12 mm proximal to the insertion". [MRI of left shoulder report, dated 2/6/17, AR at 752.]

The ALJ noted Plaintiff's left shoulder injury as part of the analysis at step two, listing her rotator cuff tear as one of Plaintiff's impairments. [Decision, AR at 18.] Between the medical records, and Plaintiff's testimony at the August 25, 2017 hearing, the ALJ was sufficiently on notice that Plaintiff injured her left rotator cuff between April 25, 2016 and November 15, 2016, although the exact date of injury is not specified. Furthermore, the ALJ was informed that Plaintiff's left rotator cuff tear contributed to her decision to stop working the second time. The ALJ, however, gave "great weight" to the RFC assessment performed by Dr. Caiati, on June 12, 2015, approximately ten months before the earliest possible left

shoulder injury date.  See Decision, AR at 23.  When the ALJ
rejected Dr. Moros's October 2014 opinion and Dr. Hecht's
November 2016 opinion that Plaintiff was disabled, [Decision, AR
at 23,] the ALJ failed to mention that Dr. Hecht's November 15,
2016 visit note also reflected the disability opinion and noted
her restricted range of motion and tenderness in her left
shoulder.  [11/15/16 visit note, AR at 713.]  Plaintiff's visits
to Dr. Goodman yielded similar opinions regarding Plaintiff's
left shoulder injury, followed by gradual improvement.  See
3/6/17 visit note, AR at 734, 4/3/17 visit note, AR at 736,
6/20/17 visit note, AR at 740-41.

          The evidence was inadequate to allow the ALJ to form a
reasoned opinion at step one, as evidenced by the ALJ's decision
to not make a decision at step one.  Furthermore, evidence was
ambiguous regarding Plaintiff's injury to her left shoulder, her
period of disability, and the appropriate characterization of
her 2016 return to work.  See Tonapetyan, 242 F.3d at 1150.
Therefore, "the ALJ's duty to investigate the facts and develop
the arguments both for and against granting benefits," was
triggered.  See Sims, 530 U.S. at 111 (citation omitted).

          Here, the ALJ did not reasonably discharge his duty to
develop the record.  Even though Plaintiff did not argue she
experienced two distinct periods of disability to the ALJ, she
presented sufficient evidence to trigger the ALJ's duty to

investigate facts that could support a favorable decision.  See

Smolen v Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) ("In Social

Security cases the ALJ has a special duty to fully and fairly

develop the record **and** to assure that the claimant's interests

are considered." (citation and quotation marks omitted)

(emphasis added)).  Furthermore, Plaintiff's failure to present

the question did not relieve the ALJ of his obligation, pursuant

to the inquisitorial nature of these proceedings, to investigate

and pursue evidence both for, and against, the granting of

benefits.  See Sims, 530 U.S. at 110-11.  Therefore, it was his

duty to conduct an inquiry into the nature of her departure from

work the second time, in light of reports from treating

physicians as to her injury.  Giving great weight to a medical

report that predates the onset of an allegedly debilitating

injury while summarily disregarding the opinions of treating

physicians does not fulfill the ALJ's duty.  The ALJ's

investigation into these claims would have produced a more

complete record upon which this Court could affirm or deny on

the merits.  Regardless of the fact that the claim for a second

disability period was not cogently presented before or during

the hearing, questions of fact were adequately raised to

obligate the ALJ to take reasonable steps to develop a

sufficient record upon which he could make a fair decision.  See

Tucker, 2019 WL 4738222, at *6; see also Barcena v. Colvin, Case

No. CV 15-003997-JEM, 2016 WL 1089163, at *5 (C.D. Cal.
March 18, 2016) (concluding that the ALJ discharged her duty to
investigate by: informing the plaintiff that there was little
evidence of a severe impairment; and suggesting that plaintiff's
representative supplement the record (citing <u>Tidwell v. Apfel</u>,
161 F.3d 599, 602 (9th Cir. 1999)).[24]  Here, the ALJ did not take
any reasonable steps to obtain additional information in
response to the questions raised by testimony and evidence
related to Plaintiff's alleged second period of disability.  In
particular, the ALJ failed to investigate Plaintiff's left
shoulder injury, which was the subject of Plaintiff's testimony,
the medical reports of at least two treating physicians, and an
MRI.

## II.  <u>Harmless Error</u>

"An error is harmless if it is inconsequential to the
ultimate nondisability determination." <u>Treichler</u>, 775 F.3d at
1099 (citation and internal quotation marks omitted).  Remand is
not necessary if an error is harmless.  But, "where the ALJ's
error lies in a failure to properly discuss competent lay
testimony favorable to the claimant, a reviewing court cannot
consider the error harmless unless it can confidently conclude

---

[24] Although the plaintiff's representative agreed to
supplement the record, the plaintiff never did so.  <u>Barcena</u>,
2016 WL 1089163, at *5.

that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1056 (9th Cir. 2006). Here, where the error is not in the ultimate conclusion but instead in the ALJ's failure to properly develop the record, the Court cannot conclude that no reasonable ALJ would have reached a different determination fully crediting testimony regarding Plaintiff's left shoulder injury. Therefore, the ALJ's failure to develop the record in this case was not harmless.

### III. **Ordinary Remand**

> The Ninth Circuit has stated,
>
> when "the record before the agency does not support the agency action, . . . the agency has not considered all relevant factors, or . . . the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 744, 105 S. Ct. 1598, 84 L. Ed. 2d 643 (1985). The Supreme Court has referred to this remand requirement as the "ordinary 'remand' rule." Gonzales v. Thomas, 547 U.S. 183, 185, 126 S. Ct. 1613, 164 L. Ed. 2d 358 (2006) (internal quotation marks omitted).

Treichler, 775 F.3d at 1099 (alterations in Treichler). The ordinary remand rule applies in social security cases. Id. The Ninth Circuit will "generally remand for an award of benefits only in rare circumstances, where no useful purpose would be

23

served by further administrative proceedings and the record has been thoroughly developed." Id. at 1100 (citations and internal quotation marks omitted).  The decision to depart from the ordinary remand rule and remand for the award of benefits is made pursuant to an analysis of the "credit-as-true" rule, which is sometimes referred to as the Varney rule, as the rule was developed in Varney v. Secretary of Health & Human Services., 859 F.2d 1396 (9th Cir. 1988).

Under the "credit-as-true" rule, the Court engages in a three-step process on the issue on remand: 1) the court asks whether the ALJ failed to provide sufficient reasons for rejecting evidence, including claimant testimony and medical opinion evidence; 2) if the ALJ so erred, the court determines whether the record has been fully developed or if there are matters that must be resolved in order to make a determination of disability, and 3) if there are no outstanding issues and further proceedings would not be useful, it may find relevant testimony credible as a matter of law. Treichler, 775 F.3d at 1100-01.

Here, as explained above, the ALJ did not provide sufficient reasons for rejecting evidence and failed to develop the record.  The proper remedy is further administrative proceedings to resolve conflicts and ambiguities in the record, receive further evidence, and otherwise develop the record as

24

necessary.  See id.  Therefore, remand for the determination and award of benefits is inappropriate, and remand for further proceedings, in accordance with the ordinary remand rule, is warranted.

Because the case is remanded for further proceedings on the ground that the ALJ did not properly develop the record at step one, it is not necessary to address Plaintiff's remaining issues.  Those issues can adequately be addressed on remand, and rulings here will not secure for Plaintiff any relief beyond what has already been granted.  See Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand.").

## CONCLUSION

On the basis of the foregoing, Plaintiff's appeal of the Administrative Law Judge's September 6, 2017 Decision is HEREBY GRANTED insofar as the ALJ's Decision is VACATED and the case is REMANDED to the ALJ for further proceedings.

There being no remaining issues in this case, the Court DIRECTS the Clerk's Office to enter judgment and close the case immediately.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAI`I, November 26, 2019.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

SUZANNE BARRAN VS. NANCY A. BERRYHILL, ETC.; CV 18-00349 LEK-KJM; ORDER GRANTING PLAINTIFF'S APPEAL AND REVERSING THE ADMINISTRATIVE LAW JUDGE'S SEPTEMBER 6, 2017 DECISION